# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| DE LAVEAGA SERVICE CENTER, INC., | Case No.  21-cv-03389-BLF |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO REMAND** |
| NATIONWIDE INSURANCE COMPANY, et al., | [Re:  ECF No. 20] |
| Defendants. | |

Before the Court is Plaintiff De Laveaga Service Center, Inc.'s Motion to Remand.  ECF No. 20 ("Motion" or "Mot.").  Plaintiff argues that this case should be remanded to the Superior Court of the State of California for the County of Santa Cruz because the Court lacks diversity jurisdiction over this case as Plaintiff and Defendant Stephen Rothhammer are both domiciled in California.  *Id.*  Defendants Nationwide Mutual Insurance Company ("Nationwide") and AMCO Insurance Company ("AMCO")[1] oppose the Motion, arguing that the claims against Mr. Rothhammer—the only non-diverse defendant—are sham claims that should be disregarded in the diversity jurisdiction analysis.  *See* ECF No. 22 ("Opp.").  The Court previously found this Motion suitable for resolution without oral argument and vacated the hearing.  *See* ECF No. 46.  For the following reasons, the Court DENIES the Motion to Remand.

## I.   BACKGROUND

This background and the Court's analysis are based on the allegations in the original complaint filed in Santa Cruz County Superior Court because the propriety of removal is "analyzed on the basis of the pleadings filed at the time of removal without reference to

---

[1] The Court uses the correct corporate names for these two Defendants, which are specified in their opposition papers.  *See* Opp. at 1 n.1.

United States District Court
Northern District of California

subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F3d 1209, 1213 (9th Cir. 1998).

Plaintiff alleges that it entered into a contract of insurance with Nationwide and AMCO that provided up to $1 million in coverage for "business personal property loss, business income loss, accounts receivable loss, and business interruption loss" for Plaintiff's auto repair business. *See* ECF No. 1 Ex. A ("Compl.") ¶ 8.  Plaintiff alleges that it paid all regular premiums and otherwise performed all required acts under the policy such that it was effective at the time of events at issue in this case.  *Id.* ¶ 9.

On October 21, 2018, a fire destroyed much of Plaintiff's auto repair business.  Compl. ¶ 7. Plaintiff thereafter made a claim for insurance benefits for losses sustained as a result of the fire. *Id.* ¶ 10.  Just over a week later, Nationwide and AMCO began making payments for business property loss and business income, which Plaintiff alleges were only a portion of what it was owed.  *Id.* ¶ 11.

Around March 1, 2019, Plaintiff alleges that Nationwide and AMCO assigned a new adjustor, Defendant Stephen Rothhammer, to adjudicate the insurance claim.  FAC ¶ 12.  After Mr. Rothhammer's assignment to Plaintiff's file, Defendants stopped payment on the claim, saying that Plaintiff in fact did not own the auto repair business.  *Id.*  Plaintiff alleges that it promptly provided proof that it was indeed the business owner, but that Defendants still refused to pay Plaintiff the benefits to which it was entitled under the policy.  *Id.*  In February 2020, Defendants allegedly completed their investigation of Plaintiff's ownership of the business and paid Plaintiff only a portion of the monthly amount that it was previously receiving before the benefits were halted.  *Id.*

Plaintiff filed the original state court lawsuit in the Santa Cruz County Superior Court on February 3, 2021, asserting claims against Nationwide Insurance Company, AMCO Insurance Company, and Stephen Rothhammer.  *See De Laveaga Serv. Ctr., Inc. v. Nationwide Ins. Co. et al.*, No. 21CV00261 (Cal. Super. Ct. Santa Cruz Cnty.).  Defendants Nationwide and AMCO removed the case to this Court on May 6, 2021.  *See* ECF Nos. 1, 4, 5.  After Nationwide and AMCO then moved to dismiss, Plaintiff filed a First Amended Complaint.  *See* FAC.  The original

United States District Court
Northern District of California

2

1   Complaint, which was operative at the time of removal and is thus the subject of this Motion,

2   asserts claims for breach of the implied covenant of good faith and fair dealing, intentional

3   infliction of emotional distress, and "malice."  Compl. ¶¶ 15-30.  Plaintiff seeks general and

4   special damages and attorneys' fees, interest, and costs of suit.  *See id.* at Prayer for Relief; *see*

5   *also* ECF No. 1, Ex. A.

6           Plaintiff filed this Motion to Remand.  *See* Mot.  Shortly afterwards, Nationwide and

7   AMCO filed a Motion to Dismiss or Strike the First Amended Complaint, which is fully briefed

8   and scheduled for a hearing on January 20, 2022.  *See* ECF No. 21.  Mr. Rothhammer was not

9   served until September 14, 2021, ECF No. 40, and his response is not yet due.

10  **II.    LEGAL STANDARD**

11          A suit may be removed from state court to federal court only if the federal court would

12  have originally had subject matter jurisdiction over the case.  28 U.S.C. § 1441(a); *see Caterpillar*

13  *Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have

14  been filed in federal court may be removed to federal court by the defendant.").  If it appears at

15  any time before final judgment that the federal court lacks subject matter jurisdiction, the federal

16  court must remand the action to state court.  28 U.S.C. § 1447(c).  The party seeking removal has

17  the burden of proof to show removal is necessary.  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018,

18  1021 (9th Cir. 2007).  "The removal statute is strictly construed, and any doubt about the right of

19  removal requires resolution in favor of remand."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d

20  1241, 1244 (9th Cir. 2009) (citation omitted).  The propriety of removal is "analyzed on the basis

21  of the pleadings filed at the time of removal without reference to subsequent amendments."

22  *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

23          Although an action may be removed to federal court only where there is complete diversity

24  of citizenship, "one exception to the requirement for complete diversity is where a non-diverse

25  defendant has been 'fraudulently joined.'"  *Hunter*, 582 F.3d at 1042 (quoting *Morris v. Princess*

26  *Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)); *see also Ritchey v. Upjohn Drug Co.*, 139

27  F.3d 1313, 1318 (9th Cir. 1998).  "If a plaintiff fails to state a cause of action against a resident

28  defendant, and the failure is obvious according to the settled rules of the state, the joinder of the

3

resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

That said, there is a "general presumption against fraudulent joinder," and defendants who assert that a party is fraudulently joined carry a "heavy burden." *Hunter*, 582 F.3d at 1046. Defendants must "show that the individuals joined in the action cannot be liable on any theory," *Ritchey*, 139 F.3d at 1318, and that "there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). That is, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting *Burris v. AT & T Wireless, Inc.*, No. 06–CV-02904-JSW, 2006 WL 2038040, at *2 (N. D. Cal. July 19, 2006)).

"Where fraudulent joinder is an issue . . . '[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.'" *Ritchey*, 139 F.3d at 1318. Accordingly, in determining whether there is fraudulent joinder, the court may consider summary judgment-type evidence such as affidavits and deposition testimony. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (citation omitted). This includes declarations submitted by both defendant and plaintiff. *Freeman Grove v. Childtime Learning Ctrs., Inc.*, No. 16-0745, 2016 WL 3561773, at *4 (C.D. Cal. June 28, 2016) (citation omitted). If factual issues are in dispute, the Court must resolve "all disputed questions of fact . . . in the plaintiff's favor." *Kalawe v. KFC Nat. Mgmt. Co.*, Civ. No. 90–007799, 1991 WL 338566, at *2 (D. Haw. July 16, 1991) (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989)); *see also Mohammed v. Watson Pharmaceuticals, Inc.*, No. SA CV09-0079, 2009 WL 857517, at *6 (C.D. Cal. Mar. 26, 2009) ("A party is only deemed to have been joined 'fraudulently' if after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." (citations and internal quotation marks omitted)).

4

III.   **DISCUSSION**

The Parties do not dispute the citizenship of each entity and individual named in the Complaint: De Laveaga Service Center (California), Nationwide (Ohio), AMCO (Iowa), and Mr. Rothhammer (California). *See* ECF No. 1 at ¶¶ 7-10 (citing Compl. ¶ 1). Nationwide and AMCO argue that the citizenship of Mr. Rothhammer should not be considered in the diversity jurisdiction analysis because Mr. Rothhammer was fraudulently joined as a defendant. If Nationwide and AMCO are correct, complete diversity exists and this Court has subject matter jurisdiction over this case. If, as Plaintiff argues, Rothhammer is not fraudulently joined, then there is not complete diversity of citizenship, this Court lacks subject matter jurisdiction, and the case must be remanded to Santa Cruz Superior Court.

The Parties focus their briefing and arguments on whether Plaintiff could assert each individual claim against Mr. Rothhammer. *See* Mot. at 7-9; Opp. at 5-11; Reply at 4-9. The Court finds, however, that general principles of principal–agent law establish that Plaintiff cannot under "any theory" fairly encompassed in the Complaint recover against Mr. Rothhammer. *Ritchey*, 139 F.3d at 1318.

"Where an agent is duly constituted and names his principal and contracts in his name and does not exceed his authority, the principal is responsible and not the agent." *Khordadian v. New York Life Ins. Co.*, 2014 WL 12705059, at *3 (C.D. Cal. June 10, 2014) (quoting *Lippert v. Bailey*, 241 Cal. App. 2d 376, 382 (1966)). Under this general principle, "[a]n agent of an insurance company is generally immune from suits brought by claimants for actions taken while the agent was acting within the scope of his employment." *Icasiano v. Allstate Ins. Co.*, 103 F. Supp. 2d 1187, 1189 (N.D. Cal. 2000). In line with this rule, "[m]any district courts have held that insurance agents named as defendants in claims by insureds for fraud, misrepresentation, and other torts were fraudulently joined when the alleged misconduct of the agents was within the scope of their role as agents." *Khordadian*, 2014 WL 12705059, at *3 (citing cases).

Here, the conduct for which Plaintiff seeks to hold Mr. Rothhammer liable arises from the partial denial and delay in granting Plaintiff benefits under its insurance policy with Nationwide and AMCO, which is within the scope of Mr. Rothhammer's role as an insurance adjustor for

those entities.  Plaintiff alleges that after Mr. Rothhammer was assigned to its insurance claim, Nationwide and AMCO stopped compensating Plaintiff on its insurance claim because Mr. Rothhammer found that Plaintiff was not the business owner.  Compl. ¶ 12.  Plaintiff further alleges that due to Mr. Rothhammer's finding, Nationwide and AMCO procrastinated and refused to restore benefits to Plaintiff, and when they did so, only restored partial benefits.  *Id.* ¶¶ 12, 14.  Finally, Plaintiff alleges Mr. Rothhammer was in contact with Plaintiff directly about the claim. *Id.* ¶ 13.  Each of these actions is taken "within the scope of [Mr. Rothhammer's] role as [an] agent[]" of the insurance companies.  *Khordadian*, 2014 WL 12705059, at *3.  Indeed, Plaintiff specifically alleges so in the Complaint.  *See* Compl. ¶ 6 (alleging that Mr. Rothhammer was an agent and that he "at all said times . . . was acting within the course and scope of [his] agency").

Plaintiff recognizes this general principle.  *See* Mot. at 8 ("[G]enerally a claims agent cannot be sued on an insurance bad faith claim.").  Plaintiff argues, however, that Mr. Rothhammer can be held liable on a conspiracy theory—that he "conspired to cause the insurer to deceive the insured by creating a false excuse to deny a valid claim."  *Id.* (citing *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 509 & n.8 (1980)).  Plaintiff claims that its Complaint, read fairly and broadly as required as this stage of the case, adequately pleads this theory.  But this exception is not as broad as Plaintiff suggests, and Plaintiff's pleading does not fit within it.

First, insurance agents may be subject to "conspiracy liability for conduct which the agents carry out 'as individuals for their individual advantage' and not solely on behalf of the principal." *The Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 47 (1989).  As such, in *Black v. Sullivan*, 48 Cal. App. 3d 557 (1975), attorneys for the beneficiaries of a trust were held liable for aiding and abetting noncompliance with California law requiring the beneficiaries to provide a balance statement because the attorneys had taken assignments of the beneficiaries' interests as security for loans and for past and future attorney's fees.  *See Doctors' Co.*, 49 Cal. 3d at 46-47 (describing the facts in *Black*).  Because the attorneys had a personal interest in the funds, they could be held liable on an aiding and abetting theory.  *Id.*  Here, Plaintiff has alleged no such personal interest in the insurance payments for Mr. Rothhammer, and indeed has alleged that he was at all times acting as the other defendants' agent.  *See* Compl. ¶ 6.  This exception thus does not apply.

1        Additionally, an insurance company and an agent may be held liable when they conspire

2    with a third-party entity to defraud the plaintiff.  *See Younan v. Equifax, Inc.*, 111 Cal. App. 3d at

3    509.  In *Younan*, the California Court of Appeal found that when an insurer works in conjunction

4    with a third-party entity to determine a claimant's eligibility for benefits, there is a duty to not

5    make misrepresentations independent of the duty arising from contract between the insurer and the

6    insured and any principal–agent relationship.  *Id.*, 111 Cal. App. 3d at 511.  As such, there could

7    be liability where there were allegations of a scheme in which the company enlisted a psychiatrist

8    to generate a false report which was then used to deny the plaintiff benefits.  *Id.*  Several courts

9    have recognized that *Younan* "did *not* involve accusations that an employee of an insurance

10   company conspired with the insurance company to defraud an insured."  *Icasiano*, 103 F. Supp. 2d

11   at 1190; *see also Medow v. Tower Ins. Co. of New York*, 2011 WL 2678875, at *5 (C.D. Cal. June

12   27, 2011) (*Younan* applies when "two separate entities involved in the insurance business

13   conspired together to defraud the plaintiff[s]").  Plaintiff's Complaint does not allege the

14   involvement of any third-party entity, instead alleging that the two insurance companies and their

15   agent Mr. Rothhammer were the architects of the alleged conspiracy.  *See* Compl. ¶ 12 (describing

16   how Mr. Rothhammer, as the agent of the insurance companies, conspired with them to deny

17   Plaintiff insurance benefits).

18        Because neither exception to the general rule applies, Mr. Rothhammer is "immune from

19   suits brought by claimants for actions taken while [he] was acting within the scope of his

20   employment."  *Icasiano*, 103 F. Supp. 2d at 1189.  He thus cannot be held "independently liable to

21   an insured under a tort or contract theory," *id.* at 1190, making the claims asserted against him

22   here fail.

23        The only remaining question is whether amendment could cure the deficiencies identified

24   above.  *Padilla*, 697 F. Supp. 2d at 1159 (remand only warranted where plaintiff could not amend

25   to address deficiencies).  But Plaintiff expressly alleges in its Complaint that Mr. Rothhammer "at

26   all said times . . . was acting within the course and scope of [his] agency."  Compl. ¶ 6.  This

27   allegation is inconsistent with any possible allegations that Mr. Rothhammer's actions fell outside

28   the scope of his agency relationship with the insurance companies.  Amendment cannot introduce

United States District Court
Northern District of California

United States District Court
Northern District of California

1    new allegations that contradict what has been asserted in earlier pleadings.  *See United States v.*

2    *Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (An amended complaint must contain

3    "additional allegations that are 'consistent with the challenged pleading' and that do not contradict

4    the allegations in the original complaint.") (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291,

5    296-97 (9th Cir. 1990)).  As such, permissible amendment could not cure the deficiencies in the

6    claims against Mr. Rothhammer.

7            Because Plaintiff cannot assert any claims against Mr. Rothhammer, he is fraudulently

8    joined for the purpose of analyzing diversity jurisdiction.  Mr. Rothhammer's citizenship is thus

9    disregarded in the diversity jurisdiction analysis.  Because there then exists complete diversity

10   among the parties, removal was proper.

11   **IV.    ORDER**

12           For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand

13   is DENIED.

14

15   Dated:  September 27, 2021

16                                                    _____
                                                      BETH LABSON FREEMAN
17                                                    United States District Judge

18

19

20

21

22

23

24

25

26

27

28